SAMUEL ZIMMERMAN,

            Plaintiff,

v.                                                Case No. 24-cv-551-pp

CASSANDRA BAIER, *et al.*,

            Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 18), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 22) AND DISMISSING CASE**

      Plaintiff Samuel Zimmerman, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. The court screened the complaint and allowed the plaintiff to proceed on Eighth Amendment claims based on allegations that the defendants did not provide treatment for his serious dental needs and that he suffered extreme pain for his abscessed tooth for over three months. Dkt. No. 9 at 6. The plaintiff has filed a motion for summary judgment, dkt. no. 18, as have the defendants, dkt. no. 22. This decision denies the plaintiff's motion, grants the defendants' motion and dismisses this case.

**I.    Facts[1]**

      The plaintiff was incarcerated at Green Bay Correctional Institution during the events described in the complaint. Dkt. No. 20 at ¶1; Dkt. No. 24 at

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

1

¶1. During that time, defendant Ellyn Baker was employed by the Wisconsin Department of Corrections as a nurse at Green Bay, defendant Cassandra Baier was assistant health services manager of the Health Services Unit and defendant Chris Stevens was (and still is) the warden there. Id. at ¶¶3-5.

   A.   Dental Care at Green Bay

When an individual incarcerated at Green Bay has a dental concern, he may submit a Dental Services Request (DSR) form to the Dental Services Unit (DSU). Dkt. No. 24 at ¶26. Dentists triage DSRs into one of the following classifications, from least to most pressing: prosthetic, hygiene, routine, essential and urgent. Id. at ¶¶27, 29. Prosthetic needs include dentures or dental prostheses. Id. at ¶32. Hygiene needs can be treated by a dental hygienist. Id. at ¶33. Routine needs are asymptomatic dental conditions, which would not be complicated by a delay in treatment. Id. at ¶34. Essential needs are symptomatic or potentially symptomatic dental conditions, which should be treated within eight weeks when feasible. Id. at ¶35. Urgent needs are dental conditions which must be addressed in a timely manner (typically within twenty-four hours of receipt of the DSR) or undue pain and suffering may ensue. Id. at ¶36.

Waitlists are maintained in chronological order based on receipt of DSRs. Dkt. No. 24 at ¶31. Waitlists are monitored daily. Id. at ¶48. If an incarcerated individual submits a DSR with an urgent dental need, he is scheduled to be seen within two to three working days. Id. at ¶30. Individuals with non-emergent concerns are scheduled in accordance with their triage classification and are placed at the bottom of the appropriate dental waitlist. Id. at ¶31.

Sometimes incarcerated individuals submit Health Service Requests (HSR) for their dental concerns. Dkt. No. 24 at ¶¶6, 8. Nursing staff triage

2

HSRs. Id. at ¶7. Nursing staff may forward HSRs to the DSU when appropriate. Id. at ¶9. At times, there are delays in triaging HSRs due to weekends and holidays. Id. at ¶15. If an incarcerated individual reports pain or requests to be seen, nursing staff will place him on the schedule to be seen, typically by nursing staff. Id. at ¶13. Nursing staff do not have authority to prescribe medication, refer incarcerated persons to offsite specialists or order imaging studies. Id. at ¶16.

Dental care at Green Bay has been limited by a high turnover rate in the DSU. Dkt. No. 24 at ¶60. While Green Bay has capacity for 749 incarcerated individuals, it often has been without an onsite dentist and forced to rely on dentists from other institutions to provide coverage. Id. at ¶59. Since 2023, Green Bay's DSU has gone through seven dentists and eight dental assistants. Id. at ¶60.

### B. Plaintiff's Dental Care

On September 5, 2023, HSU staff received an HSR from the plaintiff requesting antibiotics for a tooth infection. Dkt. No. 24 at ¶61. Because DSU had received a similar request from the plaintiff that same day, HSU staff directed him to review the response he received from the DSU. Id. The plaintiff submitted another HSR the next day with the same complaint. Id. at ¶62. Nurse Jennifer Kilmer scheduled him for a same-day nursing sick call. Id.; Dkt. No. 20 at ¶¶3, 5.

The plaintiff was seen by Nurse Michele Harjtes on September 6, 2023. Dkt. No. 24 at ¶63. Hartjes noted no acute distress, fever, chills or headaches. Id. She noted that the plaintiff's vitals were normal, his speech was clear and his respirations were regular and unlabored. Id. The plaintiff did not report a bad taste in his mouth. Id. Hartjes observed that the plaintiff had a broken

3

tooth and swollen gumline. Id. He reported pain at a level eight out of ten. Id. Hartjes dispensed a topical oral gel to treat his pain. Id. She also spoke with an HSU physician and obtained a prescription for a ten-day course of Amoxicillin, an antibiotic. Id. She had the plaintiff submit another DSR at this appointment. Id. That same day, the DSU placed the plaintiff on the essential waitlist. Id. at ¶68.

On September 13, 2023, Nurse Kilmer received an HSR from the plaintiff complaining that he was running low on Amoxicillin and that it was not working well. Dkt. No. 24 at ¶69. He also said that he was inconsistent with his medication despite knowing better. Id. On September 15, 2023, the plaintiff was seen by Nurse Rebecca McNeel for a nursing appointment. Id. at ¶70. The plaintiff again had no acute distress, fever, chills or headache and his vitals were normal, his speech was clear and his respirations were regular and unlabored. Id. McNeel observed swelling in the plaintiff's gumline and contacted a physician. Id. Another ten-day course of Amoxicillin was ordered for the plaintiff. Id. McNeel also encouraged the plaintiff to increase dental hygiene, to chew on the opposite side of his mouth and to continue with his current pain medications. Id.

On October 13, 2023, the plaintiff submitted an HSR to defendant Baier, stating that he still had not received the urgent dental care he needed. Dkt. No. 20 at ¶8. The next day—October 14, 2023—the plaintiff was seen by defendant Baker. Id. at ¶33; Dkt. No. 24 at ¶71. Baker observed redness in the plaintiff's gumline and a possible abscess in the upper right portion of his mouth. Id. After consulting an HSU physician, another ten-day course of Amoxicillin was started. Id.

On October 17, 2023, the plaintiff submitted a DSR stating, "New Dentist Dr. I realize you just got here but I am on my third tooth infection in 6 weeks. I am sick of Amoicillan [sic] and in need of 3 or 4 teeth pulled out soon." Dkt. No. 20 at ¶7. That day, the plaintiff received a response saying that he would be seen as "soon as practical." Id.

On October 18, 2023, the plaintiff submitted inmate complaint GBCI-2023-15754, stating "I am not receiving adequate dental services." Dkt. No. 20 at ¶10. On October 30, 2023, the complaint was affirmed; the examiner found that "[t]he inmate was placed on the routine list on 12/13/21 and has not been seen. Dental placed him on the essential list on 09/08/23 so he would be seen sooner. This exceeds the waitlist timeframe for routine dental treatment in DAI Policy 500.40.21. Therefore, the ICE recommends affirming this complaint." Id. at ¶12; Dkt. No. 25-2 at 2-3.

On October 22, 2023, Baker received an Interview/Information Request (IIR) from the plaintiff, notifying the HSU that the plaintiff intended to file an inmate complaint regarding the DSU waitlist and staff turnover. Dkt. No. 24 at ¶72. Baker forwarded that request to Baier. Id. The next day, Baier forwarded a copy of the plaintiff's request to the DSU for an update regarding his waitlist status. Id. at ¶73; Dkt. No. 20 at ¶11. Baier followed up on the plaintiff's IIR by emailing dental assistant Emma Knueppel and dental hygienist Marissa Shier. Dkt. No. 24 at ¶74. Knueppel responded that the routine waitlist was over three years long. Id. at ¶75. She advised that the plaintiff had been added to the essential waitlist on September 8, 2023. Id. She stated that the DSU had just begun seeing patients added to the essential waitlist in July 2023, so there was a three-to-four month wait to be seen. Id. Baker then followed up with the

5

plaintiff to let him know that the DSU would schedule him as soon as they could. Id. at ¶76.

On October 27, 2023, medical staff received an HSR from the plaintiff, advising that he was out of antibiotics for his teeth infection. Dkt. No. 24 at ¶77. The triaging nurse scheduled a same-day sick call appointment for the plaintiff. Id. That day, the plaintiff was seen by Nurse Larissa Soquet for his dental pain. Id. at ¶78. He reported that although Amoxicillin treated the pain in his mouth, he still felt a lump in his mouth. Id. He also reported new dental pain. Id. The plaintiff was prescribed a ten-day course of Augmentin, another antibiotic. Id. He also was instructed to fill out a DSR during his appointment. Id.

On October 30, 2023, Stevens received an IIR from the plaintiff, stating that DSU and HSU staff failed to timely treat his abscessed teeth. Dkt. No. 24 at ¶98. Stevens responded that the plaintiff had been upgraded from the routine to the essential waitlist. Id. at ¶99. Stevens advised the plaintiff to continue working with the HSU to ensure his needs were timely addressed. Id.

As the plaintiff got closer to the top of the essential waitlist, he had to be taken off Warfarin, a blood thinner, to prevent him from bleeding out during his extraction. Dkt. No. 24 at ¶79. Further, to ensure the safety of patients like the plaintiff who are on blood thinners, DSU may require a Prothrombin Time/International Normalized Ratio (PT/INR) test (which measures how long it takes for a patient's blood to clot) to be completed before a dental operation. Id. at ¶80. Generally, INR levels should be under 3.0 within two weeks of a dental procedure. Id. at ¶81. In the plaintiff's case, a PT/INR was required prior to his tooth extraction. Id. at ¶82. On November 1, 2023, the plaintiff completed a PT/INR indicating an INR level of 2.3. Id. at ¶83.

6

On November 3, 2023, the plaintiff submitted a DSR stating, "Anti-biotic don't work anymore. I am in excruciating pain. I can't sleep. I hardly eat. I can't wear my glasses [for] long cuz my face hurts [sic]. How long before it's practical[]. Please let it be soon." Dkt. No. 20 at ¶15. On November 6, 2023, he received a response stating, "We needed labs for you INR will be scheduled for extraction soon as possible." Id.

On November 4, 2023, Baker received a call from a correctional officer at the plaintiff's housing unit, saying that the plaintiff complained of dental pain and was concerned about his antibiotics. Dkt. No. 24 at ¶84. The plaintiff claimed that he would run out of antibiotics the next day. Id. Baker scheduled the plaintiff to be seen the next morning, on November 5, 2023. Id. During that appointment, Baker did not observe any obvious abscesses in the plaintiff's mouth. Id. at ¶86. The plaintiff complained that he was seen by DSU the week prior and obtained only X-rays. Id. But the plaintiff also had had an oral examination at that appointment. Id. at ¶91. He also requested another antibiotic prescription. Id. But Baker realized that the plaintiff was misusing his most recent course of antibiotics by taking three doses daily instead of two. Id. at ¶87. Antibiotic misuse has many serious complications, including antibiotic resistance. Id. Accordingly, Baker filed a Medication Misuses note in the plaintiff's medical record and denied his request for additional antibiotics. Id.

Two days later, on November 7, 2023, Kilmer received an HSR from the plaintiff requesting stronger pain medication. Dkt. No. 24 at ¶88. Kilmer responded that the plaintiff was scheduled to be seen by the DSU the next week and that he could continue taking Tylenol and Celebrex for his pain. Id.

7

Because of his medication misuse, the plaintiff did not qualify for stronger pain medication. Id. at ¶90.

Due to staffing shortages, the plaintiff's November 13 and 15, 2023 tooth extractions were cancelled. Dkt. No. 24 at ¶92. Moreover, Dr. Robert Jerome determined that the plaintiff's November 1, 2023 PT/INR test was outside the acceptable testing window and needed to redone. Id. at ¶93. This was necessary to prevent any post-operative bleeding the plaintiff could experience. Id.

The plaintiff wrote to the HSU and DSU regarding the missed dental appointments. Dkt. No. 20 at ¶¶19-22. He wrote to the HSU on November 13, 2023, stating "Another cancelled dental appointment, another couple of weeks of pain and trouble chewing my food. Please send ensure so I don't go low on my sugar again." Id. at ¶19. He wrote to the DSU with a similar request and received a response stating, "We will reschedule you soon. Sorry for the delay. Dental does not provide ensure for anterior tooth issues." Id. at ¶20.

On November 25, 2023, the plaintiff wrote an IIR to Utter, Baier and Baker, stating:

> This is my final plea for Dental care. Please listen carefully. DAI Policies #500.40.02 "Essential within 8 weeks/urgent 24-72 hours #500.40.06 serious dental needs dental infection, pain, or disease, #500.40.20 Dental class 36 Multiple essential dental needs. You have failed to meet these standards and have mis-classified my condition. If you do not have adequate dental services then you must send me else where for care. today makes 3 cancellations in 3 weeks.

Id. at ¶23; Dkt. No. 26-2 at 17. On November 28, 2023, the plaintiff received a response stating: "Referred to Dental." Id. That same day, Nurse Derek Henning received two IIRs from the plaintiff complaining about his cancelled DSU appointments. Dkt. No. 24 at ¶94. Henning forwarded the IIRs to the DSU. Id.

8

The plaintiff's second PT/INR test was completed on November 29, 2023. Dkt. No. 24 at ¶95. He had an acceptable INR of 2.9. Id. DSU's diagnosis of the plaintiff's dental condition during this time was buccal swelling and an infection of the first and second bicuspid, also known as teeth #5 and #4, respectively, in the upper, right portion of the mouth. Id. at ¶96. On December 4, 2023, Dr. Tommy Onjukka extracted the plaintiff's first and second bicuspid teeth. Id. at ¶97. Onjukka noted that the plaintiff tolerated the procedure well. Id.; Dkt. No. 20 at ¶25.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

9

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The plaintiff contends that the defendants failed to take reasonable steps to intervene in his dental care when they had the authority and duty to do so. Dkt. No. 19 at 8. He asserts that the defendants could have provided him with pain medication or allowed him to receive treatment from an off-site dentist. Id. at 9-13.

The defendants concede that the plaintiff's dental issues constituted a serious medical condition for the purpose of summary judgment, but they contend that they were not deliberately indifferent to his dental issues. Dkt. No. 23 at 9-10. According to the defendants, they responded to the plaintiff's concerns as quickly as they could given the limited dental resources available at Green Bay. Id. at 10. The defendants also contend that they are entitled to qualified immunity. Id. at 13.

In the plaintiff's joint reply in support of his motion for summary judgment and opposition response to the defendants' motion, he identifies four issues: (1) he was first told he would be placed on the essential wait list in February 2022, and the defendants had the authority and responsibility to have him triaged for urgent care for offsite dental treatment instead of delaying DSU treatment until December 2023; (2) Baker's decision to discontinue the plaintiff's antibiotic medication without providing an alternative showed deliberate indifference; (3) Baker's failure to provide the plaintiff with adequate pain medication caused unnecessary pain and suffering; and (4) the

10

defendants' failure to prescribe the plaintiff Ensure or a soft diet when he couldn't eat regular food amounted to deliberate indifference. Dkt. No. 33 at 1-2.

The court analyzes a plaintiff's claim that the defendants were deliberately indifferent to his serious medical needs under the Eighth Amendment's cruel and unusual punishments clause. Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. In the context of a claim that prison staff were deliberately indifferent to a plaintiff's serious medical need, the objective component requires the plaintiff to show that his medical need constitutes a risk of an objectively serious harm. Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (citing Balsewicz v. Pawlyk, 963 F.3d 650, 654 (7th Cir. 2020)). As stated above, the defendants concede that the plaintiff's dental issue amounted to a serious medical need for the purpose of summary judgment. The court will focus on whether the defendants acted with deliberate indifference.

To satisfy the subjective component, the plaintiff must demonstrate that the defendant had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart, 14

11

F.4th at 763 (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)). The plaintiff does not need to show that he was "literally ignored." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citing Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir. 2000)). "[A] doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference[.]" Id. (citing Estelle, 429 U.S. at 104). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." Id. (citing Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days)).

When it screened the complaint, the court allowed the plaintiff to proceed on claims that the defendants violated his Eighth Amendment rights by not dealing with his severe chronic dental pain for three months, from September 5, 2023 through his extractions on December 4, 2023. Dkt. No. 9 at 6. The complaint does not allege that he submitted complaints before September 5, 2023, and the court did not allow him to proceed on any claims based on events that occurred before that date. Dkt. No. 1. The plaintiff's assertion in his joint summary judgment reply/opposition response brief that he submitted a DSR on February 15, 2022 is not material to his claims in this case. Likewise, the complaint does not mention the plaintiff's request for a supplemental diet such as Ensure, and the court did not allow the plaintiff to proceed on such a claim. The plaintiff's assertions that he submitted a DSR in February 2022, and that he requested a supplemental diet, are outside the scope of this lawsuit.

12

Case 2:24-cv-00551-PP   Filed 01/30/26   Page 12 of 17   Document 43

It is undisputed that on September 5, 2023, the plaintiff submitted an HSR regarding dental pain and the next day, he submitted a DSR. It also is undisputed that the DSU appropriately responded to the plaintiff's September 6, 2023 DSR by placing him on the essential waitlist that same day. Dkt. No. 24 at ¶68. Due to staffing shortages at Green Bay, the essential waitlist time to be seen was three to four months long. Id. at ¶¶75, 103. On December 4, 2023—about three months after the DSU placed the plaintiff on the essential waitlist—the dentist, Dr. Onjukka, extracted two of the plaintiff's teeth. Id. at ¶75.

During the three months the plaintiff was on the essential waitlist, he was prescribed four cycles of antibiotics (from September 6 through October 27, 2023). Dkt. No. 24 at ¶107. The plaintiff acknowledged that the antibiotics and over-the-counter pain medication were effective in reducing his symptoms during that time. Id. at ¶108. Before the plaintiff's extractions, DSU and HSU staff monitored him and responded to his requests. He had medical visits with a nurse on September 6, September 15, October 14, October 27 and November 5, 2023. Leading up to his extractions, the plaintiff was taken off blood thinners and he had his first PT/INR test on November 1, 2023. He had another PT/INR test on November 29, 2023, shortly before the December 4, 2023 extractions.

The plaintiff contends that he should have been prescribed alternative pain medication after Baker discontinued his antibiotic medication for misuse. After the plaintiff's November 5, 2023 appointment with Baker, she filed a Medication Misuse note in his healthcare record because he was not taking his antibiotic medication as prescribed. Id. at ¶109. As a result, the plaintiff's antibiotic prescription was not renewed, and he did not qualify for stronger

13

pain medication. Id. at ¶¶109, 112. The record shows that after Baker discontinued the plaintiff's antibiotics, the plaintiff had Tylenol and Celebrex for pain (although he said that they were ineffective). On November 7, 2023, Nurse Kilmer directed the plaintiff to continue to take the Tylenol and Celebrex for pain and said that he was scheduled with the DSU the following week. The plaintiff's extraction appointments scheduled for November 13 and 15 were canceled due to DSU staffing issues and he did not qualify for stronger pain medication due to the medication misuse. The plaintiff states that he experienced significant pain until the extraction on December 4, 2023.

The defendants had limited involvement and authority regarding the plaintiff's dental care. Although the plaintiff contends that Baker should have prescribed him an alternative medication when she discontinued his antibiotic for misuse, nursing staff (like Baker) do not have the authority to prescribe medication. Dkt. No. 24 at ¶16. Baier's only involvement in the plaintiff's care was forwarding the plaintiff's October 14, 2024 IIR to the DSU. Id. at ¶73. Two days after forwarding the IIR, Baier followed up with the DSU to update the plaintiff on his waitlist status. Id. at ¶74. Warden Stevens's involvement also was limited. When Stevens received a letter from the plaintiff regarding his dental care, Stevens advised the plaintiff to continue to work with institution staff for his care. As a nonmedical administrator, Stevens was entitled to defer to the judgment of prison health professionals so long as he did not ignore the plaintiff. See Berry, 604 F.3d at 440.

The plaintiff cites Dobbey v. Mitchell, 806 F.3d 938 (7th Cir. 2015) in support of his contention that the defendants acted with deliberate indifference. In Dobbey, the court held that a prison dentist demonstrates deliberate indifference to an incarcerated individual's serious medical need by

failing to promptly treat the individual while knowing the patient may well be in serious pain that is treatable. Id. at 939-40. The plaintiff in Dobbey received no treatment during the delay, and the dentist gave no reason for waiting two weeks to examine the plaintiff despite the plaintiff having had appointments. Id. This case is distinguishable from Dobbey because, as described above, a dentist placed the plaintiff on the essential waitlist for his dental issue, and HSU and DSU medical staff saw and monitored the plaintiff until his procedure. The facts of this case also are distinguishable from those in Berry, another case the plaintiff cites. In that case, the court of appeals held that a doctor and nurse acted with deliberate indifference in not referring the plaintiff to an offsite dentist for treatment when the jail did not have a dentist. Berry, 605 F.3d at 442-43. Unlike in Berry, the plaintiff in this case was under the care of a dentist at his institution. Although the plaintiff's extraction was delayed due to staffing issues, the defendants did not refuse to obtain treatment for him.

The record shows that the defendants acted within their authority and did not ignore the plaintiff's concerns. At Green Bay, dentists are responsible for triaging incarcerated individuals onto the various dental waitlists. Dkt. No. 24 at ¶¶27, 29. DSU staff evaluated the plaintiff and placed him on the essential waitlist. The defendants lacked the authority to disregard the chronological order of the essential waitlist and take the plaintiff to an offsite dentist for treatment. Dkt. No. 28 at ¶11; Dkt. No. 30 at ¶15. They also lacked the authority to reduce the plaintiff's time on that waitlist. The defendants exercised the authority they had to respond to the plaintiff's requests and complaints. They did what they could in the context of long patient waiting lists at Green Bay's DSU. The defendants cannot be held liable for failure to act

15

Case 2:24-cv-00551-PP   Filed 01/30/26   Page 15 of 17   Document 43

outside the scope of their authority. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."); Miller v. Harbaugh, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power"); Alexander v. Richter, 756 F. App'x 611, 614-15 (7th Cir. 2018) (defendants were not deliberately indifferent to the plaintiff's eyecare where they had no authority to increase optometrists' hours at the prison).

A reasonable factfinder could not conclude that the defendants acted with deliberate indifference. The court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

### III. Conclusion

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 18.

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 22.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks

to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 30th day of January, 2026.

                                                   **BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**