UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMUEL ZIMMERMAN,

                    Plaintiff,

     v.                                          Case No. 24-cv-551-pp

CASSANDRA BAIER, *et al.*,

                    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (DKT. NO. 45), DENYING PLAINTIFF'S MOTION AND SUPPLEMENTAL MOTION TO ALTER JUDGMENT (DKT. NOS. 46. 47)

Plaintiff Samuel Zimmerman, who is confined at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983. On January 30, 2026, the court denied the plaintiff's motion for summary judgment, granted the defendants' motion for summary judgment and dismissed the case. Dkt. Nos. 43, 44. On February 23, 2026, the plaintiff filed a motion to take judicial notice of a Division of Adult Institution policy, dkt. no. 45, and a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), dkt. no. 46. On March 4, 2026, the plaintiff filed a supplemental motion to alter or amend judgment. Dkt. No. 47. This order addresses those motions.

## I.     Rule 59(e) Standard of Review

"Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citing

1

Sigsworth v. City of Aurora, 487 F.3d 506, 511-12 (7th Cir. 2007)). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996). A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.2d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A motion to alter or amend judgment must be filed no later than twenty-eight days after the entry of judgment. Federal Rule of Civil Procedure 59(e).

## II.     Discussion

Although the plaintiff dated the motion February 28, 2026, the court received the plaintiff's supplemental motion to alter judgment (Dkt. No. 47) on March 4, 2026, more than twenty-eight days after the January 30, 2026 entry of judgment. The motion is untimely, and the court will deny it. (The supplemental motion contains the same arguments as the plaintiff's original motion, although more succinctly.)

In his original motion to alter judgment, the plaintiff contends that in its summary judgment decision, the court misunderstood him regarding three issues. Dkt. No. 46 at 2. First, he asserts that the court mistakenly believed that the plaintiff had argued he should have been prescribed alternative pain medication after defendant Baker discontinued his antibiotic medication for misuse on November 5, 2023. Id. The plaintiff says that he did not argue that he should have been prescribed an alternative *pain* medication; rather, he

2

argued that Baker failed to prescribe him an alternative *antibiotic* medication. Id. He also states that defendant Baier had the authority to order an alternative antibiotic. Id. The plaintiff maintains that Baker's failure to prescribe an alternative antibiotic left the plaintiff's infected abscessed tooth untreated without antibiotics until it finally was extracted on December 4, 2023, which amounted to deliberate indifference. Id. He says that Baker's "culpable state of mind is more evident by her failure to follow DAI protocol [DAI Policy 500.80.26],[1] which mandated that an alternative be provided when a medication is cancelled due to misuse." Id. The plaintiff also contends that a genuine material dispute exists regarding whether Baker observed any abscessed teeth before she cancelled all antibiotic treatment for the plaintiff without providing any alternative antibiotic medication. Id. at 3.

Second, the plaintiff argues that the court erred when it concluded that his dental service request (DSR)—submitted on February 15, 2022—was immaterial because the court did not allow him to proceed on any claims based on events that occurred before that date. Id. at 3. The plaintiff states that the

---

[1] The plaintiff filed a motion asking the court to take of judicial notice of page 4 of DAI Policy 500.80.26. Dkt. No. 45. He provided page 4; the relevant section states, "2. When KOP medication is misused, the ACP shall discontinue the medication, change to an alternative medication or order the medication as staff controlled. 3. When staff-controlled medication is misused, absent exceptional circumstances, ACPs shall discontinue the medication and find alternatives that have less potential for misuse." Dkt. No. 45-1. The page of the policy the plaintiff provided is consistent with the policy available on the DOC website. See http://doc.wi.gov/Pages/AboutDOC/Department Policies/ DAIPolicies.aspx. The court will grant the plaintiff's motion for judicial notice, because Fed. R. Evid. 201 allows a court to take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

evidence submitted in support of his delayed treatment claim was material to show that the defendants knew about his dental problems before September 5, 2023, because this evidence is recorded in his dental record. Id. The plaintiff says this shows that the defendants knew of the significant delay in his receiving any dental treatment after being placed on the routine waiting list on December 13, 2021, and that such delay resulted in his progressing from an asymptomatic dental condition to abscessed teeth infections. Id. The plaintiff maintains that it is this delay—despite the intervening treatments of Tylenol, "celex" and antibiotics up to November 7, 2023—that amounted to deliberate indifference when he was not placed on the urgent list for dental treatment. Id.

Third, the plaintiff contends that the court erred in dismissing his claim against Warden Stevens because Stevens had the authority to refer the plaintiff to an offsite dentist and had "all the facts." Id. at 4. The plaintiff asserts that Stevens knew about the dental staffing shortage, that the plaintiff had been on the waiting list for dental treatment since 2021 and, due to delays in seeing a dentist, his routine dental problem resulted in an abscessed tooth. Id. at 5. The plaintiff maintains that there is a genuine dispute as to whether the warden displayed deliberate indifference to the plaintiff's serious medical need when he failed to order that the plaintiff be taken to an outside dentist for treatment. Id.

At summary judgment, the court addressed the issues the plaintiff raises in his motion. Regarding the February 15, 2022 DSR, the court stated:

> When it screened the complaint, the court allowed the plaintiff to proceed on claims that the defendants violated his Eighth Amendment rights by not dealing with his severe chronic dental pain for three months, from September 5, 2023 through his extractions

on December 4, 2023. Dkt. No. 9 at 6. The complaint does not allege that he submitted complaints before September 5, 2023, and the court did not allow him to proceed on any claims based on events that occurred before that date. Dkt. No. 1. The plaintiff's assertion in his joint summary judgment reply/opposition response brief that he submitted a DSR on February 15, 2022 is not material to his claims in this case. Likewise, the complaint does not mention the plaintiff's request for a supplemental diet such as Ensure, and the court did not allow the plaintiff to proceed on such a claim. The plaintiff's assertions that he submitted a DSR in February 2022, and that he requested a supplemental diet, are outside the scope of this lawsuit.

Dkt. No. 43 at 12. The court then determined that the defendants did not act with deliberate indifference:

It is undisputed that on September 5, 2023, the plaintiff submitted an HSR regarding dental pain and the next day, he submitted a DSR. It also is undisputed that the DSU appropriately responded to the plaintiff's September 6, 2023 DSR by placing him on the essential waitlist that same day. Dkt. No. 24 at ¶68. Due to staffing shortages at Green Bay, the essential waitlist time to be seen was three to four months long. Id. at ¶¶75, 103. On December 4, 2023—about three months after the DSU placed the plaintiff on the essential waitlist—the dentist, Dr. Onjukka, extracted two of the plaintiff's teeth. Id. at ¶75.

During the three months the plaintiff was on the essential waitlist, he was prescribed four cycles of antibiotics (from September 6 through October 27, 2023). Dkt. No. 24 at ¶107. The plaintiff acknowledged that the antibiotics and over-the-counter pain medication were effective in reducing his symptoms during that time. Id. at ¶108. Before the plaintiff's extractions, DSU and HSU staff monitored him and responded to his requests. He had medical visits with a nurse on September 6, September 15, October 14, October 27 and November 5, 2023. Leading up to his extractions, the plaintiff was taken off blood thinners and he had his first PT/INR test on November 1, 2023. He had another PT/INR test on November 29, 2023, shortly before the December 4, 2023 extractions.

The plaintiff contends that he should have been prescribed alternative pain medication after Baker discontinued his antibiotic medication for misuse. After the plaintiff's November 5, 2023 appointment with Baker, she filed a Medication Misuse note in his healthcare record because he was not taking his antibiotic

5

medication as prescribed. Id. at ¶109. As a result, the plaintiff's antibiotic prescription was not renewed, and he did not qualify for stronger pain medication. Id. at ¶¶109, 112. The record shows that after Baker discontinued the plaintiff's antibiotics, the plaintiff had Tylenol and Celebrex for pain (although he said that they were ineffective). On November 7, 2023, Nurse Kilmer directed the plaintiff to continue to take the Tylenol and Celebrex for pain and said that he was scheduled with the DSU the following week. The plaintiff's extraction appointments scheduled for November 13 and 15 were canceled due to DSU staffing issues and he did not qualify for stronger pain medication due to the medication misuse. The plaintiff states that he experienced significant pain until the extraction on December 4, 2023.

The defendants had limited involvement and authority regarding the plaintiff's dental care. Although the plaintiff contends that Baker should have prescribed him an alternative medication when she discontinued his antibiotic for misuse, nursing staff (like Baker) do not have the authority to prescribe medication. Dkt. No. 24 at ¶16. Baier's only involvement in the plaintiff's care was forwarding the plaintiff's October 14, 2024 IIR to the DSU. Id. at ¶73. Two days after forwarding the IIR, Baier followed up with the DSU to update the plaintiff on his waitlist status. Id. at ¶74. Warden Stevens's involvement also was limited. When Stevens received a letter from the plaintiff regarding his dental care, Stevens advised the plaintiff to continue to work with institution staff for his care. As a nonmedical administrator, Stevens was entitled to defer to the judgment of prison health professionals so long as he did not ignore the plaintiff. See Berry, 604 F.3d at 440.

The plaintiff cites Dobbey v. Mitchell, 806 F.3d 938 (7th Cir. 2015) in support of his contention that the defendants acted with deliberate indifference. In Dobbey, the court held that a prison dentist demonstrates deliberate indifference to an incarcerated individual's serious medical need by failing to promptly treat the individual while knowing the patient may well be in serious pain that is treatable. Id. at 939-40. The plaintiff in Dobbey received no treatment during the delay, and the dentist gave no reason for waiting two weeks to examine the plaintiff despite the plaintiff having had appointments. Id. This case is distinguishable from Dobbey because, as described above, a dentist placed the plaintiff on the essential waitlist for his dental issue, and HSU and DSU medical staff saw and monitored the plaintiff until his procedure. The facts of this case also are distinguishable from those in Berry, another case the plaintiff cites. In that case, the court of appeals held that a doctor and nurse acted with deliberate indifference in

6

not referring the plaintiff to an offsite dentist for treatment when the jail did not have a dentist. <u>Berry</u>, 605 F.3d at 442-43. Unlike in <u>Berry</u>, the plaintiff in this case was under the care of a dentist at his institution. Although the plaintiff's extraction was delayed due to staffing issues, the defendants did not refuse to obtain treatment for him.

The record shows that the defendants acted within their authority and did not ignore the plaintiff's concerns. At Green Bay, dentists are responsible for triaging incarcerated individuals onto the various dental waitlists. Dkt. No. 24 at ¶¶27, 29. DSU staff evaluated the plaintiff and placed him on the essential waitlist. The defendants lacked the authority to disregard the chronological order of the essential waitlist and take the plaintiff to an offsite dentist for treatment. Dkt. No. 28 at ¶11; Dkt. No. 30 at ¶15. They also lacked the authority to reduce the plaintiff's time on that waitlist. The defendants exercised the authority they had to respond to the plaintiff's requests and complaints. They did what they could in the context of long patient waiting lists at Green Bay's DSU. The defendants cannot be held liable for failure to act outside the scope of their authority. <u>See</u> <u>Burks v. Raemisch</u>, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."); <u>Miller v. Harbaugh</u>, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power"); <u>Alexander v. Richter</u>, 756 F. App'x 611, 614-15 (7th Cir. 2018) (defendants were not deliberately indifferent to the plaintiff's eyecare where they had no authority to increase optometrists' hours at the prison).

A reasonable factfinder could not conclude that the defendants acted with deliberate indifference. The court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

<u>Id.</u> at 13-16.

In his motion to alter judgment, the plaintiff rehashes arguments that he made and that the court addressed in its summary judgment decision. As the summary judgment decision quoted above shows, the court addressed the fact that although Baker filed a Medication Misuse note in the plaintiff's medical record on November 5, 2023, which resulted in the discontinuation of his

7

antibiotic, she did not have the authority to prescribe him an alternative antibiotic or pain medication. The court also addressed the fact that Warden Stevens was not liable because in response to the plaintiff's October 30, 2023 letter, Stevens advised the plaintiff to continue to work with institution staff for his care. The record shows that after the plaintiff was placed on the essential wait list, he received ongoing monitoring and care. Finally, the court addressed the plaintiff's contention that his February 15, 2022 DSR was material because it showed delay. The court explained that the DSR the plaintiff submitted in February 2022 is outside the scope of this lawsuit.

The plaintiff has not shown that the court's decision contains a manifest error of law, that the court misunderstood the plaintiff or that he is otherwise entitled to relief from judgment. The court will deny the plaintiff's motion to alter judgment.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for judicial notice. Dkt. No. 45.

The court **DENIES** the plaintiff's motion and supplemental motion to alter judgment. Dkt. Nos. 46, 47.

Dated in Milwaukee, Wisconsin this 8th day of July, 2026.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

8